IN THE COURT OF APPEALS OF THE STATE OF WASHINGTON
DIVISION THREE

| | | |
|---|---|---|
| STATE OF WASHINGTON, | ) | No. 34624-2-III |
| | ) | |
| Respondent, | ) | |
| | ) | |
| v. | ) | UNPUBLISHED OPINION |
| | ) | |
| TERI LOUISE TROWER, | ) | |
| | ) | |
| Appellant. | ) | |

PENNELL, J. — A jury convicted Teri Louise Trower of possessing a stolen motor vehicle. At sentencing, Ms. Trower received a term of 12 months' incarceration, and was assessed $2,500 in restitution and $1,250 in legal financial obligations (LFOs). We affirm Ms. Trower's conviction and restitution order, but we remand for resentencing so that the court may reconsider Ms. Trower's offender score and strike $500 in discretionary LFOs.

FACTS

The investigation of Ms. Trower's case began when law enforcement received a report of a missing 1983 Toyota pickup. In addition to making a report to the police, the victim posted information about his missing truck on Facebook.

The victim's Facebook post generated a response from a witness who indicated he had seen the Toyota in Chewelah, Washington the day after it was reported stolen. The witness observed the Toyota on top of a flatbed trailer being towed by a Chevrolet pickup truck. The witness noted the license plate of the Chevrolet, took a picture, and shared the information with law enforcement.

On the same day as the Facebook witness's report, a state trooper also observed the suspect vehicles in Chewelah. Although the trooper was not aware of the stolen vehicle report, he made contact with the Chevrolet at a gas station because he had learned from dispatch that the registered owner of the trailer (Teri Trower) had a suspended license.[1] The trooper discovered the driver of the Chevrolet was an individual named Jack Essman. Ms. Trower was with Mr. Essman as a passenger. Because Ms. Trower was not driving, the trooper did not take any further action. Upon later learning the Chevrolet and trailer were associated with a stolen vehicle, the trooper tried to regain contact. This effort was

---

[1] The jury was not informed Ms. Trower had a suspended license.

unsuccessful, but the trooper was able to obtain surveillance video from the Chewelah gas station that contained footage of Mr. Essman and Ms. Trower.

In addition to the video gathered by the trooper in Chewelah, detectives collected surveillance photos from other area gas stations. They were able to find photos depicting the suspect Chevrolet and trailer, loaded with an older model Toyota. The victim identified the Toyota depicted in the photos as the one taken from his residence.

Less than a week after the initial stolen vehicle report, law enforcement interviewed Ms. Trower. Ms. Trower admitted she and Mr. Essman had been towing a Toyota truck with her trailer. However, she claimed it was her own 1992 Toyota truck, not a stolen vehicle. Ms. Trower said Mr. Essman had come to her home in Elk, Washington to help her load her Toyota onto the trailer. The pair then traveled to Stevens County to a friend's home to get the Toyota fixed. When the friend was not available, Ms. Trower and Mr. Essman returned home with the truck and placed it in her storage shed. Ms. Trower stated that when she and Mr. Essman were heading back home they stopped at a gas station in Loon Lake. During the interview, Ms. Trower gave the detective a copy of a vehicle title to a 1992 Toyota pickup truck.

After the interview, the detective went to the gas station at Loon Lake to obtain its surveillance footage. The footage showed the trailer and the Chevrolet truck, but contrary

3

to Ms. Trower's statement, the trailer was empty.

A week after the initial interview with Ms. Trower, law enforcement went to Ms. Trower's home to look at the Toyota she claimed had been transported to and from Stevens County. Ms. Trower showed the officers a Toyota in her storage shed. Law enforcement noted the Toyota in the shed was not the same as the one depicted in the surveillance photos. The Toyota located in the shed was a newer model than the stolen vehicle and it had recently been painted the same color as the stolen Toyota.

Ms. Trower was charged with one count of possessing a stolen motor vehicle. She was found guilty after a jury trial. At sentencing, the State asserted Ms. Trower had three prior felony convictions and intervening misdemeanors, but did not present evidence of the prior convictions. Ms. Trower did not stipulate to the existence of these convictions. The trial court sentenced Ms. Trower to twelve months' incarceration based on an offender score of three. The trial court also imposed $1,250 in LFOs, including a $500 discretionary defense attorney fee.

After entering the judgment and sentence, the court held an evidentiary hearing and imposed restitution in the amount of $5,000. The trial court found the value of the stolen vehicle was $2,500 and doubled that amount in its discretion. Ms. Trower appeals.

4

## ANALYSIS

*Sufficiency of the evidence*

Evidence is sufficient to support a conviction if, viewed in the light most favorable to the State, it permits any rational trier of fact to find the essential elements of the crime beyond a reasonable doubt. *State v. Kintz*, 169 Wn.2d 537, 551, 238 P.3d 470 (2010). A claim of insufficiency admits the truth of the State's evidence and all reasonable inferences. *Id.* Circumstantial evidence and direct evidence are equally reliable. *Id.* We defer to the trier of fact on issues of conflicting testimony, credibility of witnesses, and the persuasiveness of the evidence. *State v. Thomas*, 150 Wn.2d 821, 874-75, 83 P.3d 970 (2004).

This case involves constructive, rather than actual, possession of stolen property. "Constructive possession is established by examining the totality of the situation and determining if there is substantial evidence [tending to establish circumstances] from which a jury can reasonably infer the defendant had dominion and control over the item." *State v. Jeffrey*, 77 Wn. App. 222, 227, 889 P.2d 956 (1995). Dominion and control need not be exclusive to establish constructive possession, but close proximity alone is insufficient; other facts must enable the trier of fact to infer dominion and control. *State v. George*, 146 Wn. App. 906, 920, 193 P.3d 693 (2008).

5

The evidence at trial was readily sufficient to prove constructive possession. Ms. Trower was not merely a passenger in a vehicle associated with stolen property. By her own words, Ms. Trower was the person primarily responsible for the Toyota truck that had been towed across Stevens County. Granted, Ms. Trower claimed the Toyota was her truck, not the stolen one—a statement obviously rejected by the jury as false. But Ms. Trower's words were still significant. They indicated guilty knowledge and placed Ms. Trower squarely in control of the suspect vehicle. By admitting responsibility for the towed vehicle and then attempting to disguise her Toyota to resemble the stolen one, Ms. Trower made clear that she was no hapless bystander. The jury had ample evidence to justify its verdict.

*Restitution*

Related to her sufficiency argument, Ms. Trower contends the sentencing court lacked authority to impose restitution for the value of the stolen Toyota. To the extent Ms. Trower argues the evidence is insufficient to prove her involvement in the offense conduct, we reject her claims, as noted above. But Ms. Trower also argues that because she was only convicted of possessing the stolen truck, as opposed to theft, the trial court was without authority to impose restitution for the value of the vehicle. As explained below, we reject this argument as well.

Restitution must be ordered for all losses "causually connected" to the defendant's crime of conviction. *State v. Kinneman*, 155 Wn.2d 272, 286, 119 P.3d 350 (2005). "Losses are causally connected if, but for the charged crime, the victim would not have incurred the loss." *State v. Griffith*, 164 Wn.2d 960, 966, 195 P.3d 506 (2008).

Restitution losses attributable to a conviction for unlawfully possessing stolen property are not always the same as those that would be attributable to the underlying theft. For example, if a defendant is convicted of possessing only a portion of a victim's stolen property, then restitution must be limited to that portion. *Id.* at 967-68. Similarly, if the condition of the victim's property deteriorated after being stolen, restitution must be limited to the value of the property at the time of the defendant's possession. *State v. Acevedo*, 159 Wn. App. 221, 230-31, 248 P.3d 526 (2011).

The fact that a defendant is convicted of possession of stolen property instead of theft does not automatically mean restitution must be less than a victim's full losses. Instead, the applicable amount of restitution must be determined by the sentencing judge on a case-by-case basis, using a preponderance of the evidence standard. *Griffith*, 164 Wn.2d at 965-66.

7

Under the facts here, Ms. Trower's conviction warranted restitution for the entire value of the stolen Toyota. The value set by the court was based on the truck's condition at the time of Ms. Trower's possession.[2] In addition, the facts of the case showed Ms. Trower committed the crime of unlawfully possessing the Toyota in a manner that facilitated the truck's permanent disappearance. In other words, but for Ms. Trower's crime of conviction, the victim would not have suffered the lost value of his truck. Full restitution was warranted.

*Offender score and discretionary LFOs*

The parties agree on two sentencing errors: (1) the State failed to adequately prove Ms. Trower's criminal history, and (2) the court improperly imposed a $500 discretionary LFO without determining Ms. Trower's ability to pay. We accept the State's concessions and remand for resentencing. *State v. Hunley*, 175 Wn.2d 901, 915-16, 287 P.3d 584 (2012). We further accept the State's concession that, given Ms. Trower's limited financial resources, discretionary LFOs should not be imposed.

---

[2] Although there was conflicting testimony over whether the Toyota was missing some after-market improvements, such as a roll bar, this discrepancy did not impact the sentencing court's restitution calculation. The court calculated restitution based on the Kelly Blue Book value of a Toyota pickup truck similar to the one illegally possessed by Ms. Trower. The court declined the victim's request to add after-market improvements to the value of the vehicle.

No. 34624-2-III
*State v. Trower*

CONCLUSION

Ms. Trower's conviction and order of restitution are affirmed. This matter is remanded for resentencing to strike the $500 discretionary LFO and allow the State to present evidence substantiating Ms. Trower's offender score. Ms. Trower's request to deny appellate costs is granted.

A majority of the panel has determined this opinion will not be printed in the Washington Appellate Reports, but it will be filed for public record pursuant to RCW 2.06.040.

_____
Pennell, J.

WE CONCUR:

_____    _____
Korsmo, J.                          Siddoway, J.

9