924

[No. 65824-7-I. Division One. November 21, 2011.]

THE STATE OF WASHINGTON, *Respondent*, v. ALVENO DOWLON O'BRIEN, *Appellant*.

*Maureen M. Cyr* (of *Washington Appellate Project*), for appellant.

*Gregory M. Banks, Prosecuting Attorney*, for respondent.

¶1 LEACH, A.C.J. — Alveno Dowlon O'Brien appeals four bail jumping convictions. He claims three of his four convictions violate double jeopardy, insufficient evidence supports his convictions, and the trial court erred by failing to instruct the jury on the affirmative defenses of uncontrollable circumstances and duress. Because the bail jumping statute is ambiguous regarding the intended unit of prosecution, we apply the rule of lenity, reverse three of O'Brien's four convictions, and remand for resentencing.

## FACTS

¶2 Between 1998 and 2003, O'Brien received four felony convictions. When he failed to pay his legal financial obligations, the Island County Superior Court found that he had violated the terms and conditions of his sentences. On September 30, 2008, the court issued four separate orders, modifying O'Brien's original sentences and ordering him to serve four consecutive seven-day sentences, beginning on the morning of July 1, 2009.

¶3 O'Brien failed to report to jail on July 1 because he was incarcerated. The State charged him with four counts of bail jumping. At trial, O'Brien proposed jury instructions on the affirmative defenses of uncontrollable circumstances and duress. In response, the State produced evidence that O'Brien was convicted on May 4, 2010, of a new offense committed on April 15, 2010. The State argued this evidence showed that O'Brien did not surrender promptly after his release from prison. The trial court agreed and refused to give either instruction. O'Brien did not object to the denial of the duress instruction.

¶4 The jury convicted O'Brien as charged. The trial court sentenced him to 33 months in confinement. He appeals.

## ANALYSIS

*Double Jeopardy*

■ ¶5 O'Brien argues that his four bail jumping convictions constitute a single unit of prosecution and, therefore, three of his convictions violate the state and federal constitutional guaranties against double jeopardy. Although O'Brien did not raise this constitutional challenge at trial, he may assert it for the first time on appeal.[1]

■ ¶6 The federal and state constitutional prohibitions against double jeopardy are coextensive and protect an individual from being punished twice for the same offense.[2] Two offenses are considered to be the "same offense" for double jeopardy purposes if they are the same in law and in fact.[3] But as our Supreme Court recognized in *State v. Adel*,[4] "When a defendant is convicted for violating one statute multiple times, the same evidence test will *never* be satisfied" because the multiple convictions "will always be the same in law, but . . . never . . . the same in fact."

■ ¶7 Consequently, to analyze whether a double jeopardy violation has occurred, this court must determine the unit of prosecution intended by the legislature.[5] To avoid constitutional error, when a defendant is convicted for violating one statute multiple times, each conviction must be for a separate "unit of prosecution."[6] The standard of

---

[1] *See State v. Adel*, 136 Wn.2d 629, 631-32, 965 P.2d 1072 (1998).

[2] U.S. CONST. amend. V; WASH. CONST. art. I, § 9; *State v. Sutherby*, 165 Wn.2d 870, 878, 204 P.3d 916 (2009).

[3] *Adel*, 136 Wn.2d at 632.

[4] 136 Wn.2d 629, 633, 965 P.2d 1072 (1998).

[5] *Adel*, 136 Wn.2d at 634.

[6] *Adel*, 136 Wn.2d at 632.

review for resolving unit of prosecution issues on appeal is de novo.[7] This requires a three-step analysis:

> [T]he first step is to analyze the statute in question. Next, we review the statute's history. Finally, we perform a factual analysis as to the unit of prosecution because even where the legislature has expressed its view on the unit of prosecution, the facts in a particular case may reveal more than one "unit of prosecution" is present.[8]

¶8 When we examine the relevant statute, "[t]he meaning of a plain, unambiguous statute must be derived from the statutory language."[9] "[I]f the legislature fails to define the unit of prosecution or its intent is unclear," the rule of lenity requires that we resolve any ambiguity " 'against turning a single transaction into multiple offenses.' "[10]

¶9 RCW 9A.76.170(1) provides,

> Any person having been released by court order or admitted to bail with knowledge of the requirement of a subsequent personal appearance before any court of this state, or of the requirement to report to a correctional facility for service of sentence, and who fails to appear or who fails to surrender for service of sentence as required is guilty of bail jumping.

¶10 This statute states the legislature's intent to punish a person who has been released by court order and subsequently fails to appear or surrender as directed. But the statute provides no guidance about the unit of prosecution where, as here, a person fails to surrender after one court released him under multiple orders entered in different cases, each one requiring him to surrender on the same day and at the same time. Therefore, the statute is ambiguous

---

[7] *State v. Ose*, 156 Wn.2d 140, 144, 124 P.3d 635 (2005).

[8] *State v. Varnell*, 162 Wn.2d 165, 168, 170 P.3d 24 (2007).

[9] *State v. Tvedt*, 153 Wn.2d 705, 710, 107 P.3d 728 (2005).

[10] *Tvedt*, 153 Wn.2d at 711 (internal quotation marks omitted) (quoting *Adel*, 136 Wn.2d at 635).

as to whether the legislature intended to punish the single failure to appear or the violations of multiple court orders.[11] Because the statute is susceptible to two reasonable interpretations, we apply the rule of lenity and resolve the ambiguity in O'Brien's favor.

## Sufficiency of the Evidence

 ¶11 O'Brien claims that insufficient evidence supports his convictions. However, O'Brien does not argue that the State failed to prove any of the elements required to convict him of bail jumping.[12] Rather, O'Brien claims the State "failed to disprove the affirmative defense [of uncontrollable circumstances]." But the State is not required to disprove a defense where, as here, the defense is not an element of the crime and does not negate an element of the crime.[13] Therefore O'Brien essentially asserts the availability to him of the uncontrollable circumstances defense under the facts of this case. We discuss this argument below.

## Availability of Defense Instructions

 ¶12 O'Brien claims that the trial court denied him his constitutional right to present a defense by refusing to give his proposed affirmative defense instructions. This court reviews a trial court's refusal to give a requested jury instruction de novo where the refusal is based on a ruling of

---

[11] The statute's history does not indicate the legislature's intent regarding the unit of prosecution. In 2001, the legislature amended the statute to add the failure to surrender and the affirmative defense language. It also removed the former statute's knowledge element to require only that the defendant knew a court order required him to appear or surrender. *Compare* former RCW 9A.76.170 (1983), *with* RCW 9A.76.170. *See also State v. Cardwell*, 155 Wn. App. 41, 47, 226 P.3d 243 (2010) (citing *State v. Fredrick*, 123 Wn. App. 347, 353, 97 P.3d 47 (2004)), *remanded on other grounds*, 172 Wn.2d 1003, 257 P.3d 1114 (2011).

[12] In order to convict, the State was required to prove that O'Brien (1) was held, charged with, or convicted of a particular crime; (2) was released by court order with knowledge of the requirement to report to a correctional facility for service of sentence; and (3) failed to surrender for service of sentence. RCW 9A.76.170(1).

[13] *State v. Lively*, 130 Wn.2d 1, 10-11, 921 P.2d 1035 (1996).

law.[14] This court reviews a refusal based on factual reasons for an abuse of discretion.[15] O'Brien's claims fail.

¶13 Jury instructions are adequate if they permit the parties to argue their theories of the case, do not mislead the jury, and properly inform the jury of the applicable law.[16] A defendant is entitled to have the jury instructed on his theory of the case if evidence supports that theory.[17] A defendant must establish each element of an affirmative defense by a preponderance of the evidence.[18] Where a defendant has done so and the trial court refused to instruct on the defense, we must reverse.[19]

¶14 RCW 9A.76.170(2) provides this affirmative defense to the crime of bail jumping: that "uncontrollable circumstances prevented the [defendant] from appearing or surrendering." To establish the defense, a defendant must prove that he did not contribute to the circumstances in "reckless disregard of the requirement to appear or surrender" and that he "appeared or surrendered as soon as such circumstances ceased to exist."[20]

¶15 We need not decide whether incarceration is an "uncontrollable circumstance"[21] because here the State presented evidence that O'Brien did not surrender as soon

---

[14] *State v. Walker*, 136 Wn.2d 767, 772, 966 P.2d 883 (1998).

[15] *Walker*, 136 Wn.2d at 771-72.

[16] *State v. Barnes*, 153 Wn.2d 378, 382, 103 P.3d 1219 (2005).

[17] *State v. Williams*, 132 Wn.2d 248, 258-60, 937 P.2d 1052 (1997).

[18] *State v. Harvill*, 169 Wn.2d 254, 258, 234 P.3d 1166 (2010).

[19] *Williams*, 132 Wn.2d at 259-60.

[20] RCW 9A.76.170(2).

[21] RCW 9A.76.010(4) provides the relevant definition:

"Uncontrollable circumstances" means an act of nature such as a flood, earthquake, or fire, or a medical condition that requires immediate hospitalization or treatment, or an act of a human being such as an automobile accident or threats of death, forcible sexual attack, or substantial bodily injury in the immediate future for which there is no time for a complaint to the authorities and no time or opportunity to resort to the courts.

as he was released from custody, i.e., as soon as circumstances ceased to exist. O'Brien produced no evidence to the contrary and did not challenge the State's evidence.[22] Therefore, he failed to establish his entitlement to an uncontrollable circumstances instruction.

¶16 O'Brien also claims he was entitled to a duress instruction. But O'Brien waived his ability to pursue this claim on appeal by failing to object, as required by CrR 6.15.[23] Because he does not argue the trial court's refusal to give the instruction was a manifest error affecting a constitutional right, we decline to review this issue for the first time on appeal.[24]

## CONCLUSION

¶17 Because the bail jumping statute, as applied to the facts of this case, is ambiguous regarding the unit of prosecution intended by the legislature, we apply the rule of lenity and resolve the ambiguity in O'Brien's favor. Conse-

---

[22] O'Brien argues that he "was released long after the charging period, so any acts or omissions that occurred then are irrelevant." But O'Brien does not cite any authority to explain what he means by this statement. Therefore, we assume he has found none. *State v. Logan*, 102 Wn. App. 907, 911 n.1, 10 P.3d 504 (2000) (quoting *DeHeer v. Seattle Post-Intelligencer*, 60 Wn.2d 122, 126, 372 P.2d 193 (1962)).

[23] CrR 6.15(c) provides,

Before instructing the jury, the court shall supply counsel with copies of the proposed numbered instructions . . . . The court shall afford to counsel an opportunity . . . to object to the giving of any instructions and the refusal to give a requested instruction . . . . The party objecting shall state the reasons for the objection, specifying the number, paragraph, and particular part of the instruction to be given or refused.

[24] RAP 2.5(a)(3); *see Trueax v. Ernst Home Ctr., Inc.*, 124 Wn.2d 334, 341-42, 878 P.2d 1208 (1994) (holding that by failing to object to trial court's refusal to give proposed instruction, party did not preserve instructional error for review in accordance with CR 51(f)).

quently, we reverse three of his four bail jumping convictions and remand for resentencing on the remaining count.

GROSSE and APPELWICK, JJ., concur.